NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES ROBERSON, | Civil Action No. 14-218 |
| *Plaintiff,* | |
| v. | OPINION |
| CAROLYN W. COLVIN, | July 2, 2015 |
| Acting Commissioner of Social Security, | |
| *Defendant.* | |

ARLEO, UNITED STATES DISTRICT JUDGE.

Before this Court is Plaintiff James Roberson's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income Benefits (collectively, "Disability Benefits"). Plaintiff argues that the Commissioner's decision was not supported by substantial evidence. For the reasons set forth in this Opinion, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

I. STANDARD OF REVIEW AND APPLICABLE LAW

A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if there exists substantial evidence to support the decision. 42 U.S.C. § 405(g); Markle v. Barnhart, 324 F.3d 182, 187 (3d

1

Cir. 2003). Substantial evidence, in turn, "means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses of expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973).

### B. The Five-Step Disability Test

In order to determine whether a claimant is disabled, the Commissioner must apply a five-step test. 20 C.F.R. § 404.1520(a)(4). First, it must be determined whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as work activity, both physical and mental, that is typically performed

for either profit or pay. 20 C.F.R. § 404.1572. If it is found that the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. If it is determined that the claimant is not engaged in substantial gainful activity, the analysis moves on to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that an impairment or combination of impairments is severe only when it places a significant limit on the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. Id.; Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 196 (3d Cir. 2007).

At the third step, the Commissioner must determine whether there is sufficient evidence showing that the claimant suffers from a listed impairment or its equivalent. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner must ask at step four whether the claimant has residual functional capacity ("RFC") such that he is capable of performing past relevant work; if that question is answered in the affirmative, the claim for benefits must be denied. Id. Finally, if the claimant is unable to engage in past relevant work, the Commissioner must ask, at step five, "whether work exists in significant numbers in the national economy" that the claimant is capable of performing in light of "his medical impairments, age, education, past work experience, and 'residual functional capacity.'" 20 C.F.R. §§ 404.1520(a)(4)(iii)–(v); Jones, 364 F.3d at 503. If so, the claim for benefits must be denied. The claimant bears the burden of establishing steps one through four, while the burden of proof shifts to the Commissioner at step five. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Under 42 U.S.C. § 405(g) and Third Circuit precedent, this Court is permitted to "affirm, modify, or reverse the [Commissioner's] decision with or without a remand to the [Commissioner] for a rehearing." Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984); Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 865–66 (3d Cir. 2007). While an outright reversal with an order to award benefits is permissible in the presence of a fully developed record containing substantial evidence that the claimant is disabled, the Court must order a remand whenever the record is incomplete or lacks substantial evidence to justify a conclusive finding at one or more of the five steps in the sequential analysis. See Podedworny, 745 F.2d at 221–22.

## II. BACKGROUND

### A. Procedural History

This case arises out of Plaintiff's January 2, 2011, application for disability insurance benefits and May 1, 2012, application for supplemental security income (with a protective filing date of January 2, 2011). Tr. 121–32, 144. Plaintiff's disability insurance benefits claim was denied initially on April 4, 2011, and upon reconsideration on July 14, 2011. Tr. 64–68, 70–72. Plaintiff sought review before an administrative law judge, and a hearing was held on May 15, 2012, before the Honorable Richard DeSteno (the "ALJ"). Tr. 81. On June 12, 2012, the ALJ issued a decision denying Plaintiff's claim, finding that he was not disabled because there were "jobs that exist in significant numbers in the national economy" that Plaintiff could perform. See Tr. 13–20. The Appeals Council denied review on November 6, 2013. Tr. 1–6. Having exhausted his administrative remedies, Plaintiff then timely filed this action on January 13, 2014. Dkt. No. 1, Compl.

### B. Factual Background

#### 1. Plaintiff's Work History

Plaintiff is a 54-year-old male who alleged that he became disabled and unable to work on October 8, 2009. Tr. 13, 146. However, Plaintiff has been unemployed since at least November 11, 2006, due to his incarceration for assault and forgery. Tr. 146, 325, 331. Prior to his incarceration and the onset of his alleged disability, Plaintiff worked as a corrections officer and as a boiler operator for the Newark Board of Education. Tr. 18, 147. As a corrections officer, Plaintiff mostly oversaw inmates working in the kitchen, loaded and unloaded trucks, and cleaned the kitchen. Tr. 18, 33. He also assisted with prisoner control and would help lift or carry prisoners and move furniture. Tr. 158. As a boiler operator, Plaintiff took out trash, swept halls, and set up the gymnasium and multi-purpose rooms of various schools. Tr. 32. Both jobs required Plaintiff to frequently lift objects that weighed at least twenty-five pounds and included extended amounts of walking and standing. Tr. 157–58.

In his initial application for disability benefits, Plaintiff claimed to be suffering from Insulin Dependent Diabetes Mellitus ("IDDM"), kidney dysfunction, high blood pressure, depression, and panic disorder. Tr. 49. Plaintiff currently lives with his girlfriend and teenage daughter, and spends most of his time going to the library, to church, or reading the newspaper. Tr. 160, 164. Although Plaintiff stated that he is able to fold laundry and do the dishes, he alleges that in his current condition, he is unable to do a vast majority of household chores. Tr. 162. Specifically, Plaintiff states that he can only lift twenty pounds, but infrequently and with great difficulty, can only walk for about half a mile before needing rest, and has problems concentrating and remembering to do basic things. Tr. 167, 175. Plaintiff also asserts that he has trouble sleeping. See Tr. 18.

### 2. Plaintiff's History of Physical Impairments

Plaintiff has had IDDM for over thirty years, and there is evidence of diabetic neuropathy resulting in some vision loss. Tr. 220, 225–26. On January 18, 2010, Plaintiff was found unresponsive by his girlfriend and brought to Robert Wood Johnson Hospital where he was treated for low blood sugar due to "decreased oral intake." Tr. 206–07. On May 13, 2010, Plaintiff was brought to Saint Michael's Medical Center because he had taken insulin but forgot to eat. Tr. 269. Once he had eaten, however, he denied having any complaints. Id. On August 8, 2010, Plaintiff was again taken to a hospital because of his low blood sugar after being found confused on a public bus, Tr. 239; however, after he drank some juice, Plaintiff claimed to feel better and walked out of the hospital on his own without informing or being examined by medical staff. Tr. 243. On January 31, 2011, Plaintiff had a "falling out" in front of the library after taking insulin but forgetting to eat lunch. Tr. 275. Plaintiff had no complaints once he arrived at the hospital. Id. On both June 20, 2011, and July 12, 2011, Plaintiff was taken to Saint Michael's Medical Center because he took more than his normal amount of insulin and then did not eat anything afterwards. Tr. 422, 429.

Plaintiff also has a history of Chronic Kidney Disease ("CKD") related to diabetic nephropathy which has been treated by his nephrologist, Dr. William Chenitz. Tr. 355. A January 21, 2010, abdominal ultrasound due to an indication of renal insufficiency came back normal. Tr. 293. It appears, however, that Plaintiff's CKD has progressively gotten worse: in August 2010, Plaintiff was noted as having CKD Stage 3 by Dr. Umrana Ahmed. Tr. 248. By August 2011, his disease had progressed to Stage 4. Tr. 481–82. Despite renal sonograms indicating normal or unremarkable findings, Tr. 445, by March 15, 2012, it appeared that Plaintiff would soon need dialysis access. See Tr. 447, 554. At virtually all consultations with

Dr. Chenitz, Plaintiff either denied having any complaints or reported feeling good or okay. Tr. 466, 470, 481, 494, 501. Plaintiff did complain about back pain in March 2011, but an MRI of the lumbar spine was unremarkable. Tr. 414.

On April 12, 2010, Dr. Bonito Sanchez wrote a medical assessment letter to the Office of Disability Adjudication and Review stating that Plaintiff was unable to work due to his IDDM, hypertensive vascular disease, hyperlipidemia, and diabetic nephropathy and retinopathy. Tr. 220. Dr. Sanchez did not include any specific limitations in either his letter or in his own treatment notes. Id. On April 2, 2012, Dr. Teresa Madrid also wrote a letter which was largely similar to Dr. Sanchez's; the letter did not include any explanations or specific limitations resulting from Plaintiff's condition. Tr. 514. In two separate letters dated March 5, 2012, and April 2, 2012, Dr. Chenitz stated that Plaintiff's condition was worsening and that he was being prepared for renal replacement therapy. Tr. 344, 512.

### 3. Plaintiff's History of Mental Impairments

In addition to his physical impairments, Plaintiff also has sought medical treatment for mental impairments at the Bayonne Community Mental Health Center from April 2010 through April 2012. Tr. 516. In his initial walk-in visit on April 19, 2010, Plaintiff stated that he was "depressed all the time" and discouraged as a result of his incarceration which cost him his careers and tarnished his reputation. Tr. 323, 325. Plaintiff also denied suffering from any chronic pain or physical/developmental disability. Tr. 324. Plaintiff had no prior psychiatric treatment and stated that, despite attempts to receive such treatment during his incarceration, he was never provided mental health services because there were others with "more severe problems." Tr. 334. Plaintiff's prison records do not indicate, however, any attempts to seek

7

mental health treatment. Tr. 517–49. It was noted that Plaintiff had mild to transient symptoms. Tr. 328.

Plaintiff was diagnosed with panic attacks with agoraphobia—first episode—and a major depressive episode by Raquel Rahim, A.P.N. at his initial psychiatric evaluation. Tr. 336. Plaintiff again was noted as having mild to transient symptoms. Id. Plaintiff had nine total visits with Ms. Rahim, whose notes are based on Plaintiff's self-reporting. See Tr. 338–40, 552–54. At his initial psychiatric evaluation on June 9, 2010, Plaintiff reported "fleeting suicidal ideation," Tr. 334, but previously denied having suicidal thoughts at emergency room visits for his diabetes that occurred during the course of his mental health treatment. Tr. 270, 422, 429. Plaintiff reported that his condition gradually improved during the course of his mental health treatment. On August 20, 2010, Plaintiff stated that when he took his medication, he would not go into "full blown" panic and that he was sleeping better. Tr. 340. On August 3, 2011, Plaintiff stated that his depression was better but that he still suffered from some anxiety. Tr. 552. On September 14, 2011, Plaintiff reported that his panic attacks were occurring further apart, that his sleep was better, and that his depression was okay. Tr. 553. On January 10, 2012, it was also noted by Ms. Rahim that Plaintiff was in a good mood, positive, and eloquent. Tr. 554. In his last visit with Ms. Rahim on April 10, 2012, she noted that Plaintiff was mildly anxious but "overall in good spirits and positive." Id.

### III. THE ALJ'S DECISION

Following a hearing on May 15, 2012, Tr. 27–43, the ALJ issued his decision on June 12, 2012, in which he found that Plaintiff was not disabled. Tr. 21. The ALJ first noted that Plaintiff had not been engaged in any substantial gainful activity since the alleged onset date of

October 8, 2009. Tr. 15. At step two, the ALJ found that Plaintiff suffered from the following medically determinable severe impairments: (1) diabetes; and (2) renal disease. Id.

At step three of the sequential analysis, the ALJ found that Plaintiff did not have a medically determinable impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). Tr. 17. Specifically, the ALJ measured Plaintiff's diabetes against the listed requirements for endocrine disorders in Listing 9.00 and his renal disease against Listings 6.02 and 6.06. Id. In concluding that Plaintiff's diabetes did not meet or medically equal a listed impairment, the ALJ found that the evidence in the record did not make the required showing of long-term complications associated with his diabetes or establish any "end organ damages rising to listing levels." Id. The ALJ concluded that Plaintiff's renal disease also did not meet the listing requirements because "the evidence [did] not document the need for dialysis, kidney transplant, or other requisite findings on testing as required by listings 6.02 or 6.06." Id.

The ALJ then determined Plaintiff's RFC. The ALJ found that Plaintiff was capable of performing the full range of light work as defined at 20 C.F.R. 404.1567(b) and 416.967(b), including: (1) lifting and carrying objects weighing up to twenty pounds; (2) frequently lifting and carrying objects weighing up to ten pounds; (3) standing, walking, and sitting up to six hours in an eight-hour day; and (4) pushing and pulling arm and leg controls. Id. Additionally, the ALJ found that Plaintiff had no significant non-exertional limitations. Id. In making that determination, the ALJ first evaluated Plaintiff's testimony regarding his subjective feelings of pain in light of the medical evidence in the record. Tr. 18–19. The ALJ found, however, that Plaintiff's statements concerning the "intensity, persistence, and limiting effects" of his symptoms were not credible. Tr. 19. The ALJ noted that MRIs of Plaintiffs lumbar spine were

normal, that abdominal ultrasounds from 2010 "due to indication of renal insufficiency" were unremarkable, that Plaintiff's nephrologist, Dr. William Chenitz, did not indicate any exertional limitations in his treatment notes, and that Plaintiff's diabetes related symptoms appeared to stem from his "history of medical noncompliance." Id. Finally, based on Plaintiff's own statements, the ALJ concluded that Plaintiff's lack of work appeared to be caused by his incarceration rather than his medical impairments. Id.

In so finding, the ALJ accorded the opinions of Plaintiff's treating physicians Dr. Sanchez and Dr. Madrid no weight due to their letters' insufficient explanation and lack of support found in the objective medical evidence. Tr. 20. Specifically, the ALJ rejected Dr. Sanchez's opinion because it was "not sufficiently explained" and because it conflicted with the reports of Dr. Ahmed which indicated that Plaintiff was "feel[ing] OK." Id. Similarly, the ALJ rejected Dr. Madrid's "declaration of disability" because it was "not supported by more recent treatment records of Dr. Chenitz." Id.

Next, the ALJ considered whether Plaintiff was capable of performing any of his past relevant work in light of his RFC. The ALJ concluded that both of Plaintiff's previous jobs, as a corrections officer and a boiler operator/head custodian required a medium exertional level of work. Id. Accordingly, the ALJ found that Plaintiff could not perform those jobs. Id. At step five, however, the ALJ found that in light of Plaintiff's "age, education, work experience, and RFC, there [were] jobs that exist in significant numbers in the national economy" that he could perform and that therefore, Plaintiff was not disabled. Tr. 20–21. In reaching that conclusion, the ALJ relied heavily upon the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Appendix 2") and Social Security Ruling 83-11. Tr. 20. The ALJ found that

Appendix 2 directed a finding of "not disabled" because Plaintiff was capable of performing substantially all of the exertional demands of light work, with no non-exertional limitations. Id.

## IV. DISCUSSION

Plaintiff argues that the ALJ's decisions at steps two and three, as well as his RFC assessment, were not supported by substantial evidence. The Court will address each argument in turn.

### A. The ALJ's Step Two Finding

At step two, the ALJ found that Plaintiff's mental impairments were not severe. Tr. 17. So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, however, any error the ALJ made in this determination was harmless. Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 (3d Cir. 2007). Here, the ALJ found that Plaintiff had severe impairments involving both diabetes and renal disease. Tr. 15. Therefore, any error that may have been made regarding the severity of Plaintiff's mental impairments at step two was harmless and is thus not reversible error.

### B. The ALJ's Step Three Finding

Plaintiff also challenges the ALJ's finding at step three that none of Plaintiff's conditions, either individually or in combination, met or medically equaled a listed impairment. Specifically, Plaintiff challenges the ALJ's determination that Plaintiff did not suffer from renal disease or nephrotic syndrome as defined in Listings 6.02 or 6.06, respectively. Plaintiff argues that the ALJ ignored the letters from Dr. Chenitz stating that Plaintiff would soon need dialysis and points to the fact that he has recently undergone surgery to receive a shunt necessary for dialysis treatments as evidence that his conditions meet or medically equal a listed impairment. The Court disagrees.

11

The Court cannot reverse or remand an ALJ's decision on the basis of additional evidence that was not before the ALJ unless such evidence is new, material, and Plaintiff can show good cause for why it was withheld from the ALJ initially. Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001). For evidence to satisfy the materiality requirement, it must not merely concern evidence of the "subsequent deterioration of [a] previously non-disabling condition." Szubak v. Sec. of Health & Human Servs., 745 F.2d 831, 834 (3d Cir. 1984).

In this case, the ALJ compared Plaintiff's condition to Listings 6.02 and 6.06 in Appendix 1. To meet Listing 6.02, Plaintiff must have been on dialysis for at least twelve months or currently be receiving dialysis that is expected to last at least twelve months. 20 C.F.R. Part 404, Subpart P, Appendix 1. Although Dr. Chenitz did indicate in both of his letters that Plaintiff would eventually need dialysis, at the time the ALJ rendered his decision Plaintiff had not received any kind of dialysis treatment, nor did the objective medical evidence reveal an immediate need for such treatment. See Tr. 36, 302–03, 334, 344, 443, 512, 554. Any future need for dialysis resulting from the further deterioration of Plaintiff's kidneys could potentially be grounds for a new disability claim but cannot serve as a basis for finding that the ALJ's decision to deny benefits was not supported by substantial evidence. Similarly, Listing 6.06 for nephrotic syndrome requires Plaintiff to suffer from anasarca—a general swelling of the body. 20 C.F.R. Part 404, Subpart P, Appendix 1. As the ALJ acknowledged, however, there is nothing in the record that suggests Plaintiff was diagnosed with or complained of symptoms commonly associated with such a condition. See Tr. 17, 438–510.

The ALJ also found that none of Plaintiff's impairments considered individually or in combination medically equaled the severity of a listed impairment. Tr. 17. Plaintiff fails to demonstrate otherwise. Although Plaintiff has been diagnosed with Stage Four CKD, there is no

evidence that Plaintiff has suffered from renal failure or end-organ damage. Tr. 17, 438–510. At the hearing, the only symptoms Plaintiff claimed to suffer from as a result of his CKD were shortness of breath and excessive urination. Tr. 36. Although Plaintiff did complain to his nephrologist of back pain, a subsequent MRI of his lumbar spine was unremarkable. Tr. 414, 468. Plaintiff has failed to demonstrate how these symptoms match the severity of the requirements in the listings. Plaintiff has not been hospitalized as a result of his CKD, nor has he complained of any severe bone pain, high blood pressure or any other physical symptoms corroborated by objective medical evidence which would medically equal the listing requirements. The objective medical evidence reveals no complications or symptoms Plaintiff suffers from that would equal the severity of the conditions required by the listings. Thus, the Court finds substantial evidence in the record to support the ALJ's finding at step three that Plaintiff's condition did not meet or medically equal a listed impairment in Appendix 1.

C. The ALJ's RFC Determination

As noted above, the ALJ determined that Plaintiff was capable of performing the full range of light work with no non-exertional limitations. Tr. 17. Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ failed to consider or explain the basis for rejecting contrary evidence in the record. The Court disagrees.

An ALJ must consider all pertinent evidence. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000). While the ALJ does not need to discuss every piece of evidence included in the record, he must explain his reasons for discounting contradictory evidence. Id. at 122.

### 1. Plaintiff's Subjective Complaints of Pain

Plaintiff argues that the ALJ failed to properly evaluate his subjective complaints of pain.[1] Again, the Court disagrees.

In assessing whether Plaintiff was disabled, the ALJ is required to consider Plaintiff's subjective complaints of pain. 20 C.F.R. §§ 404.1529, 416.929; Dorf v. Bowen, 794 F.2d 896, 901 (3d Cir. 1986). Plaintiff's subjective complaints without more, however, are not enough to establish that Plaintiff is disabled. Dorf, 794 F.2d at 901. Plaintiff retains "the burden of demonstrating that h[is] subjective complaints were supported by medical evidence." Alexander v. Shalala, 637 F.2d 968, 972 (3d Cir. 1981). Furthermore, once it has been established by medical evidence that Plaintiff's symptoms were caused by a medically determinable impairment, in order to determine the symptoms' "intensity, persistence and functionally limiting effects," the ALJ must "make a finding about the credibility of [Plaintiff's] statements about the symptom(s) and its functional effects." SSR 96-7p, 61 Fed. Reg. 34483, 34484 (July 2, 1996). In addition, if Plaintiff's symptoms can effectively be controlled through treatment or medication, his condition cannot be found disabling. Dearth v. Barnhart, 34 F. App'x 874, 875 (3d. Cir. 2002) (citing Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986)).

In this case, the ALJ considered Plaintiff's subjective complaints and found that although Plaintiff suffered from impairments that could reasonably be expected to cause his symptoms, Plaintiff's complaints regarding their intensity, persistence, and limiting effects were not

---

[1] The Court finds absolutely no basis upon which to sustain Plaintiff's claim of bias against the ALJ. Plaintiff has alleged no level of misconduct on behalf of the ALJ but merely states a disagreement with the ALJ's determination of Plaintiff's credibility. Specifically, the ALJ's conclusion that Plaintiff's lack of work was primarily caused by his incarceration is supported at numerous points in the record and Plaintiff's self-reporting, Tr.146, 325, 331, and there is no evidence to suggest or reason to conclude that the ALJ's determination was even remotely grounded in some level of bias against claimants who have served time in prison or are on welfare.

substantiated by the objective medical evidence. Tr. 19. This determination is supported by substantial evidence. The medical evidence reveals Plaintiff's complaints of weakness and passing out from diabetes complications were caused by Plaintiff's own medical non-compliance in failing to eat after taking his prescribed medication. See Tr. 206–07, 239–243, 269, 275, 422, 429, 529. Plaintiff's complaints regarding his CKD are also unsupported by the medical evidence and Plaintiff's own prior reporting. Although Plaintiff testified at the hearing that his CKD causes shortness of breath and excessive urination, Tr. 36, the record is devoid of any documents substantiating Plaintiff's claim. Tr. 438–510. Plaintiff complained of back pain on one occasion, Tr. 468, but an MRI of his lumbar spine was normal, Tr. 414; at every other consultation with Dr. Chenitz, Plaintiff reported feeling well. See Tr. 439, 466, 470, 481, 494.

Likewise, Plaintiff's complaints regarding his panic disorder and depression are inconsistent with the objective medical evidence and Plaintiff's previous statements. In assessing Plaintiff's RFC, the ALJ clearly considered Plaintiff's mental impairments and found that those impairments did not create any exertional or non-exertional limitations. Tr. 17. On two separate occasions, Plaintiff was diagnosed as having only mild to transient symptoms. Tr. 328, 336. Although Plaintiff indicated that he attempted to receive mental health services during his incarceration, Tr. 334, Plaintiff's prison records do not contain any information on or indication of Plaintiff's need for mental health services during that time. Tr. 518–49. Additionally, Plaintiff reported that, while on his prescribed medication, he would not go into "full blown" panic and was sleeping better. Tr. 340. Furthermore, the most recent records of Ms. Rahim, who treated Plaintiff at Bayonne, clearly indicate that Plaintiff's depression was improving and that his panic attacks were less frequent. See Tr. 552–54.

### 2. Treating Physician Opinions

As part of his analysis, the ALJ must consider Plaintiff's treating physicians' opinions. Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994). The opinions of treating physicians are given substantial, and sometimes even controlling, weight. 20 C.F.R. §404.1527(d)(2); Cotter, 642 F. 2d at 704. The opinions of treating physicians may be rejected outright only if there is clear contradictory medical evidence. Fouch v. Barnhart, 80 F. App'x 181, 185 (3d Cir. 2003) (citing Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)). Such opinions also "may be accorded more or less weight depending upon the extent to which explanations are provided...." Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 118 (3d Cir. 2012) (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quotation omitted)). If there is conflicting medical evidence, the ALJ is allowed to choose which source to credit so long as he considers all of the evidence and provides some reason for discounting the evidence rejected. Fouch, 225 F.3d at 317. Moreover, the diagnosis of a condition, without more, is not enough to establish disability. Foley v. Comm'r of Soc. Sec., 349 F. App'x 805, 808 (3d Cir. 2009) (citing Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990)). Additionally, disability determinations are reserved to the Commissioner of the Social Security Administration; statements by doctors or medical experts that Plaintiff is disabled do not override the conclusions the Commissioner is legally authorized to make nor do they guarantee or necessitate a finding of disability. 20 C.F.R. § 404.1527(d)(2). As noted previously, the ALJ does not need to consider every piece of evidence, and needs only to provide explanations for why contradictory evidence was rejected. Burnett, 220 F.3d at 122.

Plaintiff argues that the ALJ ignored the opinions of his treating physicians. The Court disagrees. The ALJ did not ignore the opinions of Plaintiff's treating physicians, but instead

chose to accord them no weight because they were insufficiently explained. Tr. 20. This decision is supported by substantial evidence. First, both of the letters from Dr. Sanchez and Dr. Madrid concerning Plaintiff's IDDM simply state Plaintiff's condition and the kinds of doctors he regularly visits. Neither letter, however, explains the functional effects this condition has on Plaintiff that could reasonably support the conclusion that Plaintiff is disabled. Tr. 220, 514. In addition, the conclusions made by Plaintiff's treating physicians are themselves inconsistent with the objective medical evidence which shows Plaintiff's condition could reasonably be controlled by treatment and medication. See Tr. 206–07, 269, 239–243, 275, 422, 429, 529. Similarly, the conclusions of Plaintiff's nephrologist, Dr. Chenitz, are also unsupported by the objective medical evidence and insufficiently explained. Tr. 344, 512. As the ALJ noted, Dr. Chenitz's own records do not indicate that Plaintiff suffered from any complaints relating to his CKD—indeed they consistently indicate that Plaintiff was feeling well and had no complaints. Tr. 466, 470, 481, 494, 501. Dr. Chenitz's letters simply restate Plaintiff's diagnosis and mention that Plaintiff may soon need dialysis, Tr. 344, 512; but, as noted previously, Plaintiff had not received, nor had he been fitted to receive, any dialysis treatment at the time the ALJ rendered his decision. See Tr. 36 (Plaintiff stating that he was being prepared for surgery for shunt to receive dialysis), 554 (notes from Raquel Rahim dated April 10, 2012, reporting that Plaintiff stated he may need dialysis in the near future).

Although Plaintiff is correct that the ALJ did not explicitly consider the statements of Ms. Rahim, Plaintiff's treating nurse at Bayonne, Ms. Rahim's letter cannot fairly be characterized as contradictory evidence. Ms. Rahim's letter simply states Plaintiff's diagnosis, the medication he was prescribed, and Plaintiff's need to continue treatment. Tr. 516. Ms. Rahim's letter does not contain any conclusions about Plaintiff's functionality, but instead seems to suggest that

Plaintiff's symptoms can be controlled through continued treatment. See Tr. 516. The letter also does not mention Ms. Rahim's own notes which clearly show that Plaintiff's condition was improving. See Tr. 340, 516, 553–54. The ALJ found that the record did not establish any non-exertional limitations caused by Plaintiff's mental impairments and there is nothing in the record that contradicts this finding. Tr. 20; see Tr. 323–339, 552–54. Because the ALJ considered Plaintiff's mental impairments in his RFC assessment and reached a conclusion that is supported by the objective medical evidence and Plaintiffs own reporting, the Court declines to disturb the ALJ's finding.

## V.  Conclusion

Because the Court finds that the ALJ's decision is supported by substantial evidence, the Commissioner's disability determination is **AFFIRMED**. An appropriate order will follow.

/s *Madeline Cox Arleo*
HON. MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE